**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RICHARD SCHLESINGER,

       Plaintiff,

       v.

FENWICK HIGH SCHOOL,

       Defendant.

No. 25-cv-02194
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard Schlesinger (Schlesinger) is an openly gay teacher who, while employed by Defendant Fenwick High School (Fenwick), was subjected to disparaging comments about his sexual orientation by a supervisor. Schlesinger complained to Fenwick administrators and later to Human Resources, to no avail.[1] Schlesinger subsequently obtained employment with another school, but Fenwick falsely informed his new employer that he had engaged in sexual misconduct while at Fenwick, resulting in a recommendation that he be terminated. Schlesinger subsequently resigned. Schlesinger sued Fenwick, asserting violations of Title VII of the Civil Rights Act of 1964 for discrimination and retaliation, along with related state law claims. *See generally* R.[2] 32, First Amended Complaint (FAC). Fenwick moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] The Court accepts as true all the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Schlesinger. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

[2] Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

R. 17, Mot. Dismiss. For the following reasons, the motion is granted in part and denied in part.

## Background

Schlesinger, an openly gay man, was employed as a teacher by Fenwick, a private Catholic preparatory high school, in December 2022. FAC ¶ 6. Beginning in or around August 2023, Schlesinger's direct supervisor began making disparaging comments to him regarding his sexuality. *Id.* ¶ 7. In February 2024, Schlesinger complained to Fenwick administrators about the disparaging comments, but Fenwick took no remedial action. *Id.* ¶ 8.

In April 2024, Schlesinger accepted a teaching position with a local public high school. *Id.* ¶ 9. Pursuant to Illinois law, Fenwick was required to complete a questionnaire (an ISBE form) informing Schlesinger's new employer about any allegations of sexual misconduct with students by Schlesinger. *Id.* ¶ 10. In April 2024, Fenwick informed Schlesinger's prospective new employer that no allegations of sexual misconduct had been made against Schlesinger. *Id.* ¶ 11. Thereafter, according to Schlesinger, his supervisors disparaging comments intensified *Id.* ¶ 12. Schlesinger, in turn, escalated his complaint to Fenwick's Human Resources department. *Id.* ¶ 13. Although the Human Resources department agreed the comments directed at him were harassing and discriminatory, Schlesinger alleges, Fenwick still took no remedial action despite his request for an investigation. *Id.* ¶ 14.

In May 2024, Schlesinger became aware of a rumor of Schlesinger's sexual misconduct while employed at Fenwick. *Id.* ¶ 15. He reported the rumor to Human Resources immediately, informing Fenwick that the rumor was false and unsubstantiated. *Id.* ¶ 16. Fenwick agreed but took no action. *Id.* ¶ 17. Schlesinger worked his final day at Fenwick on or about May 31, 2024, and began working as a teacher for his new employer, a local public high school, on August 24, 2024. *Id.* ¶¶ 18–19.

Schlesinger alleges that around the same time of his new employment, Fenwick underwent changes in administration and began looking into Schlesinger's prior harassment complaints and the previously dismissed rumors of sexual misconduct. *Id.* ¶ 22. He alleges that on or about September 19, 2024, Fenwick falsely informed his new employer that he had engaged in sexual misconduct while employed at Fenwick based on unsubstantiated rumors that had been previously dismissed. *Id.* ¶ 23, 24. Schlesinger further alleges that, before making that disclosure, Fenwick's new administrator did not discuss the allegations with him or provide him an opportunity to respond. *Id.* ¶ 25. Schlesinger alleges, on information and belief, that his sexual orientation and his prior complaints of discrimination and harassment were motivating factors in Fenwick's disclosure to his new employer. *Id.* ¶ 26.

On October 10, 2024, Schlesinger's new employer informed him that it would recommend his termination to the school board as a result of Fenwick's report. *Id.* ¶ 27. Approximately one week later, Schlesinger resigned. *Id.* ¶ 28.

Schlesinger sued Fenwick asserting claims under Title VII for discrimination (Count I) and retaliation (Count II), along with state claims for defamation (Count IV)[3], false light (Count V), tortious interference with contract (Count VI), intentional interference with prospective economic advantage (Count VII), negligence (Count VIII), and discrimination under the Illinois Human Rights Act (IHRA) (Count IX).[4] Fenwick now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). R. 17, Mot. Dismiss; R. 18, Memo. Dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[3]The Court notes that the Complaint contains no Count III and proceeds directly from Count II to Count IV. Fenwick raises the omission in its motion, and Schlesinger states in response that the omission is a scrivener's error. For clarity and consistency, the Court refers to the claims using the numbering in the Complaint.

[4]Schlesinger added his claim under the IHRA after the motion to dismiss was fully briefed. The parties, however, agreed to rest on the previous briefings, as they are equally applicable to this new claim. R. 31, Order.

*Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Fenwick advances four principal grounds for dismissal. *See* Memo. Dismiss. at 1–3. First, Fenwick argues that Schlesinger fails to state Title VII discrimination and retaliation claims because he does not plausibly allege an adverse employment action attributable to Fenwick, a sufficiently severe or pervasive hostile work environment, or facts supporting an inference that Fenwick acted because of his sexual orientation or protected activity. *Id.* at ¶¶ 9–10. Second, Schlesinger's five state-law claims— defamation, false light, tortious interference with contract, interference with prospective economic advantage, and willful and negligence—are barred by state law, which provides immunity for disclosures made by schools and their employees pursuant to the statute unless the information provided was knowingly false. *Id.* at ¶ 2. Third, the defamation and false-light counts fail in any event because the challenged statements were not false and were protected by privilege. *Id.* at ¶¶ 4–5. Finally, the interference and negligence-based claims independently fail because Schlesinger has not plausibly alleged the elements necessary to state those causes of action. *Id.* at ¶¶ 6–8. For the reasons stated below, the motion to dismiss is granted as to the Federal claims, and the Court declines to exercise supplemental jurisdiction over the state law claims.

## I. Federal Claims

In Counts I and II, Schlesinger asserts federal claims under Title VII for discrimination based on his sexual orientation and retaliation. FAC ¶¶ 33–36, 38–41. The federal claims rest on two sets of adverse-action allegations: (1) Fenwick's alleged post-employment disclosure to Schlesinger's new employer and the resulting recommendation of termination and resignation, *Id.* ¶¶ 23–29; and (2) alleged workplace comments and inaction culminating in a hostile work environment, *Id.* ¶¶ 7–17.

Fenwick moves to dismiss both federal counts under Rule 12(b)(6), arguing that Schlesinger has not plausibly alleged a materially adverse action attributable to Fenwick or facts sufficient to support liability under Title VII. R. 18, Memo Dismiss. at 3–6. The Court addresses each in turn.

### A. Discrimination

In Count I, Schlesinger brings a Title VII discrimination claim based on sexual orientation. Comp. ¶ 34. Title VII prohibits employers from discriminating against employees because of a protected characteristic. *See* 42 U.S.C. § 2000e-2(a). Title VII prohibits discrimination "because of" sex, and that prohibition extends to sexual orientation. *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644 (2020); *Hively v Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339, 351–52 (7th Cir. 2017) ("a person who alleges that she experienced employment discrimination on the basis of sexual orientation has put forth a case of sex discrimination for Title VII purposes."). "A complaint alleging sex discrimination under Title VII 'need only aver that the employer

6

instituted a (specified) adverse employment action against the plaintiff on the basis of [his] sex.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (citation omitted).[5] Fenwick argues that Schlesinger has failed to allege an adverse employment action. Memo. Dismiss at 3–6. For the reasons stated below, the Court agrees.

### 1. Adverse Employment Action

A Title VII discrimination claim requires an adverse employment action affecting the "compensation, terms, conditions, [or] privileges of employment." *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007). Adverse employment actions generally fall into three categories: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011). Where a plaintiff proceeds under a constructive-discharge theory, one recognized path is where an employer's actions would make clear to a reasonable employee that he will be "immediately fired if he does not resign." *Fields v. Bd. of Educ.*, 928 F.3d 622, 625 (7th Cir. 2019) (cleaned

---

[5]The Court notes that in Fenwick's briefing, Fenwick repeatedly relies on the summary judgment standard for Title VII discrimination claims. *See e.g.*, Memo. Dismiss at 4. The summary judgment standard is not proper here. As the Seventh Circuit has clearly stated, "[s]atisfying Rule 8 and the accompanying standards articulated by the Supreme Court in *Twombly* and *Iqbal* does not require a plaintiff to plead a prima facie case of employment discrimination." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). On a related note, Fenwick also argues that Schlesinger must plead a comparator. But again, the law in this Circuit is clear that "[t]he plaintiff is not required to identify similarly situated comparators at the pleading stage." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014).

up). Another path involves discriminatory working conditions even more egregious than those required for a hostile work environment, which itself requires harassment "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 463 (7th Cir. 2002).

Fenwick first argues that Schlesinger fails to state a Title VII discrimination claim because he fails to allege an adverse employment action by Fenwick. According to Fenwick Schlesinger does not claim that he was constructively discharged by Fenwick, nor does he allege any changes in the terms and conditions of his employment at Fenwick. Memo Dismiss at 4. Rather, Fenwick contends that Schlesinger complains of his subsequent employer's decision to seek his termination. *Id*. But that subsequent employment decision, the way Fenwick sees it, cannot be attributed to Fenwick, because Schlesinger was no longer employed by Fenwick at the time he was discharged, and the subsequent employer—not Fenwick—controlled the decision whether to continue Schlesinger's employment. *Id*. at 5. Fenwick concedes that while its transmission of the ISBE form to Schlesinger's subsequent employer may have precipitated the decision to terminate Schlesinger, it is not responsible for the employment decisions of Schlesinger's subsequent employer. *Id*. Passing along the form, submits Fenwick "is not an adverse action that supports a prima facie case under Title VII." *Id*. (citing *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 462 (7th Cir. 2007). Fenwick further argues that Title VII does not recognize the "interference theory" Schlesinger attempts to invoke. *Id*.

8

In response, Schlesinger argues that contrary to Fenwick's contention, he has alleged an adverse employment action by way of Fenwick informing his subsequent employer that he had engaged in sexual misconduct. Resp. at 7. From Schlesinger's perspective, there is a legal basis to hold Fenwick liable under Title VII for the actions of his subsequent employer—the interference theory. *Id.* Under this theory, a plaintiff sues one employer for interfering with his or her employment prospects or relationships with other employers. R. 20, Resp. at 7. (citing *Douglas v. Univ. of Chi.*, 619 F. App'x 556, 557 (7th Cir. 2015)). The Seventh Circuit, from Schlesinger's point of view, has not definitively foreclosed an "interference theory" under Title VII liability. *Id.* Schlesinger insists that he has adequately alleged that Fenwick did more than merely transmit neutral information. Fenwick posits Schlesinger "falsely informed" his new employer that he had engaged in sexual misconduct, which allegedly led the employer to recommend his termination and prompted his resignation. *Id.* at 7. At this stage, argues Schlesinger, this suffices.

Fenwick replies that Schlesinger's attempt to invoke the interference theory does not save his claim. As Schlesinger himself noted, argues Fenwick, the Seventh Circuit has expressed reluctance to recognize interference theory of liability in a Title VII context. Reply at 3 (citing *Douglas*, 619 F. App'x 556). In fact, asserts Fenwick, at least one district court has concluded that interference theory is unavailable in the Seventh Circuit, *id.* (citing *Kerr v. WGN Cont'l Broad, Co.*, 229 F.Supp.2d 880 (N.D. Ill. 2002), and others "have presumed that Seventh Circuit would reject interference theory if squarely presented with that question." *Id.* (citing *Mays v. BNSF Ry. Co.*,

9

974 F.Supp. 2d 166, 1173-74 (N.D. Ill. 2013). Even if the interference theory was plausible, posits Fenwick, Schlesinger's claims still fails because he fails to allege either that Fenwick was his employer or sufficiently controlled the employment relationship. *Id*. The Court finds that Fenwick has the better of the argument.

The Seventh Circuit has repeatedly recognized that a Title VII claim ordinarily requires the existence of an employment relationship between the plaintiff and the defendant as to the challenged adverse action. *See, e.g., Logan v. City of Chicago*, 4 F.4th 529, 538 (7th Cir. 2021). "For purposes of Title VII, an employee can have more than one employer: an entity can be an indirect employer or a joint employer or have some other complex combined relationship with an employee." *Clifton v. Bd. of Educ.*, 2024 WL 1254282, at *4 (N.D. Ill. March 25, 2024) (quoting *Johnson v. Advocate Health & Hosps Corp.*, 892 F.3d 887, 905 (7th Cir. 2018)). To determine whether an entity is a joint employer for Title VII purposes, courts consider: "(1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the employer's responsibility for the costs of the operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015). As the Seventh Circuit has stated, "'the employer's right to control is the most important,' and a court must give it the most weight." *Frey v. Hotel Coleman*, 903 F.3d 671, 676 (7th Cir. 2018) (citation omitted). In assessing whether a defendant exercised sufficient control over an employment relationship to qualify as an employer or joint employer, the Seventh

10

Circuit places primary weight on control, especially the power to hire and fire. *See Love*, 779 F.3d at 702 (7th Cir. 2015); *Frey*, 903 F.3d at 676 (7th Cir. 2018); *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, 69 F.4th 437, 449 (7th Cir. 2023). "At the pleading stage, a plaintiff must allege 'sufficient facts to support a theory that the defendant exercised enough control over her to qualify as a joint employer.'" *Clifton*, 2024 WL 1254282 at *4.

Here, the Complaint fails to allege sufficient facts that Fenwick was Schlesinger's employer or joint employer. Schlesinger alleges that he left Fenwick and began a separate employment relationship with a public high school. FAC ¶¶ 18–21. The Complaint does not allege that Fenwick employed Schlesinger at that time or exercised control over the subsequent employer's employment decision. *See Id.* ¶¶ 18–21, 27–29. Nor does it allege that Fenwick, as opposed to Schlesinger's subsequent employer, had the power to fire him. In fact, it alleges that the new employer would only "recommend" termination to its school board. *Id.* ¶¶ 27–29. Under the Seventh Circuit's control-focused approach, that absence of control is dispositive. *See Love*, 779 F.3d at 702; *Frey*, 903 F.3d at 676; *Bronson*, 69 F.4th at 449.

Schlesinger's interference theory also fails to save his claim. It is undisputed that the Seventh Circuit has not adopted the "interference theory" under Title VII. *Douglas*, 619 F. App'x at 557.[6] Indeed, the Seventh Circuit has expressed doubt that discrimination statutes create "blanket liability" for interference with another

---

[6]Some circuits have recognized interference theory, while others have not. *See Douglas*, 619 F. App'x at 557 (collecting cases) (explaining that the Sixth Circuit, Eleventh Circuit, Ninth Circuit, and D.C. Circuit have recognized interference theory, while the First Circuit and Second Circuit have rejected it).

11

employer's employment relationship. *EEOC v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995). Following suit, numerous district courts have found that Title VII precludes claims based upon an interference theory. *See Clifton*, 2024 WL 1254282 at *6 (collecting cases). Even assuming the viability of the interference theory, such theory would require allegations that the defendant so controlled the plaintiff's employment relationship that it is appropriate to treat the defendant as a *de facto* or indirect employer. *Douglas*, 619 F. App'x at 557. The Complaint alleges no such control here. *See* FAC. ¶¶ 18–21, 23, 27–29. The Complaint makes clear that the subsequent employer, not Fenwick, was Schlesinger's employer.

In short, Schlesinger has not plausibly alleged either a qualifying employer relationship or the degree of control necessary to support an interference-based Title VII theory. Therefore, he fails to plausibly allege an adverse action necessary for a Title VII discrimination claim. The Court now turns to Schlesinger's remaining theory of adverse action, that while he was employed at Fenwick, he was subjected to a hostile work environment because of his sexual orientation.

To state a hostile work environment claim, a plaintiff must allege that: (1) he was subjected to unwelcome harassment;, (2) the harassment was due to plaintiff's protected class; (3) the harassment was severe or pervasive enough to create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Huri v. Off. Of the Chief Judge of the Circuit Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015). As the Seventh Circuit has explained, "[t]o rise to the level of hostile work

12

environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive relationship." *Id.*

Fenwick argues that Schlesinger's hostile-work-environment claim fails because the Complaint alleges only vague "disparaging comments" with no factual detail sufficient to show severe or pervasive harassment. Memo. Dismiss at 5–6. Fenwick maintains that general hostility and comments are not actionable unless they are sufficiently severe and pervasive to alter the terms and conditions of employment. *Id.* (citing *Griffin v. Potter*, 356 F.3d 824, 829–30 (7th Cir. 2004); *King v. Acosta Sales & Marketing, Inc.*, 678 F.3d 470, 472 (7th Cir. 2012)).

Schlesinger counters that he has plausibly alleged adverse action through a hostile-work-environment theory. Resp. at 6–8. Schlesinger contends that a plaintiff may allege adverse action by pleading a hostile work environment based on a protected characteristic. *Id.* (citing *Alamo v. Bliss*, 864 F.3d 541, 549–50 (7th Cir. 2017)). In deciding whether a work environment is objectively hostile, asserts Schlesinger, courts consider the totality of the circumstances, including the frequency and severity of the conduct, whether it was threatening or humiliating, whether it was merely an offensive utterance, and whether it interfered with work performance. *Id.* Applying that framework, Schlesinger insists that he plausibly pleads a hostile environment claim. He points to the Complaint's allegations that his direct supervisor began making disparaging comments regarding his sexuality in August 2023; that Schlesinger complained to Fenwick administration in February 2024 and Fenwick took no action; that the comments intensified; that Schlesinger then

13

escalated his complaint to human resources; that human resources agreed the conduct was "harassing and discriminatory"; and that Fenwick still did nothing despite Schlesinger's request for an investigation. FAC. ¶¶ 7–14; R. 20, Resp. at 7–8. Schlesinger also points to the allegation that, after his second complaint, false rumors of sexual misconduct began circulating, that he reported those rumors to human resources, and that Fenwick determined the rumors were false and unsubstantiated but again took no corrective action. *Id.* ¶¶ 15–17; R. 20, Resp. at 5. At this stage, asserts Schlesinger, these allegations are enough to infer a hostile work environment. Resp. at 6. The Court disagrees.

At the Rule 12(b)(6) pleading stage, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To survive dismissal, however, the complaint must still "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Schlesinger is correct that Rule 8 does not require a "comprehensive factual narrative," and that a complaint ordinarily need only provide enough information to identify the grievance and permit investigation. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714–15 (7th Cir. 2006); *Rapid Test Prods., Inc. v. Durham Sch. Servs., Inc.*, 460 F.3d 859, 860 (7th Cir. 2006). Even so, the factual allegations here are too thin to plausibly suggest severe or pervasive harassment.

The problem is not that Schlesinger has failed to quote every remark or identify every date. The problem is that the Complaint alleges only unspecified "disparaging

14

comments" of unknown content, unknown severity, and unknown frequency. Compl. ¶¶ 7, 12–14. Schlesinger's allegations are conclusory; they "are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal*." *McCauley v. City of Chi.*, 671 F.3d 611, 618 (7th Cir. 2011). Those allegations do not allow a reasonable inference that the comments were so severe or pervasive as to alter the terms and conditions of Schlesinger employment. *Griffin*, 356 F.3d at 829–30; *King*, 678 F.3d at 472. Nor does the rumor allegation cure the deficiency. The Complaint alleges only that "a fellow teacher informed Schlesinger of a false rumor," not that a Fenwick employee or supervisor started the rumor. Compl. ¶ 15. And Schlesinger's response does not identify the rumor's source either. R. 20, Resp. at 6; R. 29, Reply at 4–5. Fenwick argues, and the Court agrees, that under these circumstances, the Court need not "strain to find inferences in Plaintiff's favor," and it would be unreasonable to infer from the present allegations that the rumor itself was actionable conduct by Fenwick. R. 29, Reply at 4–5 (citing *Coates v. Ill. State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977)).

*Alamo* does not alter that conclusion. 864 F.3d 541. As Fenwick notes, the complaint there included substantially more factual content—specific slurs, identified perpetrators, and corroborating incidents tending to show that the terms and conditions of employment were negatively affected. R. 29, Reply at 4. Here, by contrast, Schlesinger offers only the sort of vague and conclusory allegations that courts in this District have found insufficient. *See Watkins v. City of Chicago,* 2025 WL 2802914 (N.D. Ill. Sept. 30, 2025)*; Pillow v. Collins,* 2025 WL 1696481 (N.D. Ill.

15

June 17, 2025); *Salgado v. Graham Enters., Inc.*, 2019 WL 3555001, at 3 (N.D. Ill. Aug. 1, 2019). On the facts as pleaded, viewing the allegations in the light most favorable to Schlesinger, the Court finds that he has not plausibly alleged adverse action to state a hostile-work-environment claim.

Accordingly, the Court finds that Schlesinger fails to plausibly plead a discrimination claim in Count I.

### B. Retaliation

In Count II, Schlesinger asserts a retaliation claim under Title VII. The Complaint alleges, that Schlesinger "was retaliated against for opposing acts prohibited by Title VII" and that Fenwick's actions injured him. FAC ¶¶ 38–41. More specifically, the allegations are that Schlesinger complained to the administration and then to human resources about sexuality-based comments, that the comments intensified after his first complaint, that false rumors arose after his second complaint, and that Fenwick later informed his new employer that he had engaged in sexual misconduct. *Id.* ¶¶ 8–17, 23–29.

Title VII prohibits an employer "from discriminating against an employee who has opposed any practice made unlawful by Title VII. " *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). To state a Title VII retaliation claim, a plaintiff must allege that he engaged in protected activity, that his employer took a materially adverse action against him, and that there is a causal link between the two. *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018). A materially adverse action in the retaliation context is one that "might well have dissuaded a reasonable worker from

16

engaging in protected activity such as making or supporting a charge of discrimination." *Id.*

### 1. Adverse Employment Action

Fenwick moves to dismiss Count II for the same reasons as Count I. Memo. Dismiss at 6–7. Specifically, Fenwick insists that it did not take any adverse action against Schlesinger, rather, the later employment consequence—his subsequent employer's recommendation of termination and Schlesinger's resulting resignation— was imposed by a non-party, not Fenwick. *Id.* Furthermore, argues Fenwick, the workplace allegations remain too vague—resting on unspecified "disparaging comments" and an unidentified rumor—to plausibly allege materially adverse retaliatory conduct. *Id.*

Predictably, Schlesinger sees it differently. Schlesinger maintains that Count II adequately alleges materially adverse action in two ways. Resp. at 9–10. First, according to Schlesinger, his internal complaints were protected activity, and the subsequent alleged escalation in harassment and circulation of rumors plausibly constitutes retaliation. *Id.* (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663–64 (7th Cir. 2006)). Second, he maintains that Fenwick's later false disclosure to his new employer is actionable post-employment retaliatory conduct. Resp. at 10 (citing *Verprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888–91 (7th Cir. 1996); *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 485–86 (7th Cir. 2015)).

The Court agrees with Fenwick. To be sure, Schlesinger is correct that post-employment retaliation can be actionable in appropriate circumstances. *See* Resp. at

17

9–10; *Verprinsky*, 87 F.3d at 888–91; *Greengrass*, 776 F.3d at 485–86. However, Schlesinger must still plausibly allege a materially adverse action attributable to Fenwick, and for the same reasons discussed in Count I, the Complaint does not do so here. The workplace-comment allegations are too thinly pleaded: the Complaint alleges only unspecified "disparaging comments" of unknown content, frequency, and severity, plus a rumor whose source is not identified. Compl. ¶¶ 7, 12–15. The later-termination theory fares no better because the Complaint alleges that the new employer—not Fenwick—would only "recommend" termination to its school board, after which Schlesinger resigned. *Id.* ¶¶ 27–29. Absent plausible allegations that Fenwick exercised control over that employment relationship or otherwise caused the subsequent employer's action, the Complaint does not plausibly attribute that later employment consequence to Fenwick. *See* Mot. Dismiss at 6; Reply at 5–6. Nor does the Complaint otherwise plead facts showing that Fenwick itself took materially adverse retaliatory action.

### 2. Causation

Fenwick further argues that Count II fails on causation for the same reason it fails on adverse action. Mot. Dismiss at 6. To state a Title VII retaliation claim, a plaintiff must allege "(1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a 'but for' causal connection between the two." *Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789, 793 (7th Cir. 2020). Fenwick contends that because it "did not take any adverse action against Plaintiff," Schlesinger necessarily cannot satisfy the third element either. Mot. Dismiss at 6.

18

Not so, counters Schlesinger, insisting that causation is plausibly alleged in two ways. First, the timing of events supports an inference of retaliation: after his first complaint to administration, the harassment from his supervisor intensified, and after his second complaint, false rumors of sexual misconduct began to circulate. Resp. at 9. Schlesinger contends that this chronology permits the inference that the challenged conduct occurred because he complained of discrimination. *Id.* Second, as to the later disclosure to the new employer, Schlesinger alleges "[o]n information and belief" that his sexual orientation and his complaints about discrimination and harassment while employed at Fenwick "were a motivating factor for the false and defamatory disclosure to Schlesinger's new employer." *Id.* at 10; Compl. ¶ 40. Schlesinger further argues that pleading on information and belief is permissible where the relevant facts are peculiarly within the defendant's control. Resp. at 10.

Fenwick replies that the causation theory fails because it still depends on adverse actions the Complaint does not plausibly allege. Reply at 5–6. As to the workplace allegations, Fenwick maintains that the complaint's references to intensified harassment and an unidentified rumor are too vague to support a plausible retaliation claim. *Id.* at 5. As to the later disclosure, Fenwick argues that the "real adverse action" Schlesinger seeks to redress is his "purportedly coerced resignation from his subsequent employer," but that consequence is not attributable to Fenwick absent allegations of control, which are missing here. *Id.* Fenwick further notes that the disclosure occurred roughly four months after Schlesinger left Fenwick, which, in their view, cuts against the plausibility of a retaliation claim

19

based on that act. *Id.* at 6. Fenwick points to *Carmody*, which affirmed dismissal where the plaintiff gave "no potential explanation for the long delay between [protected activity] and the alleged retaliation." *Id.*; *Carmody v. Board of Trustees of University of Illinois*, 747 F.3d 470, 480 (7th Cir. 2014).

The Court finds that Fenwick's argument carries the day. Because Count II fails at the adverse-action step, it necessarily fails on causation as well. The workplace allegations are too thinly pleaded to support a plausible inference that Fenwick took materially adverse retaliatory action after Schlesinger complained, and the later disclosure theory falters because the Complaint does not plausibly attribute Schlesinger's later employment consequence to Fenwick. *See supra* I.A.1. Without a sufficiently pleaded adverse employment action by Fenwick, Schlesinger cannot plausibly allege that any such action was caused by his protected activity. *See Marshall*, 973 F.3d at 793. And to the extent Schlesinger relies on timing alone, Fenwick is correct that the several-month gap between Schlesinger's departure from Fenwick and the September 2024 disclosure further weakens any inference of causation. *See Carmody*, 747 F.3d at 480. Accordingly, Count II fails on causation as well.

Thus, Count II fails at the adverse-action element for substantially the same reasons as Count I. Without a plausibly alleged materially adverse action by Fenwick, there can be no plausible causation, and therefore, Schlesinger's Title VII retaliation claim cannot proceed.

## II. State Law Claims

Because the Court dismisses Schlesinger's federal claims, only his state law claims remain. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" once it "has dismissed all claims over which it has original jurisdiction." "Although the decision is discretionary, '[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (citation omitted) (alteration in original).

This case is at the pleading stage, and the Court has not invested substantial judicial resources in resolving the merits of the state-law claims. Nor is there any apparent reason to depart from the ordinary rule and retain supplemental jurisdiction. Accordingly, having dismissed Counts I and II, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. Those claims are dismissed without prejudice for refiling in state court. *See* 28 U.S.C. § 1367(c)(3).

## Conclusion

For the reasons stated above, the Court grants Fenwick's motion to dismiss without prejudice. Schlesinger may amend the complaint on or before March 24, 2026 if he can in good faith allege facts sufficient to state a claim consistent with this ruling and applicable law. To the extent Schlesinger elects not to amend, Schlesinger remains free to pursue any viable state-law claims in state court.

Date:  March 10, 2026

_____
United States District Judge
Franklin U. Valderrama